**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

Civil Action No. 12-cv-01741-MSK

**VIVIAN ROBLES o/b/o DANIEL A. SANCHEZ III,**

   **Plaintiff,**

**v.**

**CAROLYN W. COLVIN, Acting Commissioner of Social Security,**

   **Defendant.**[1]

---

### OPINION and ORDER

---

  **THIS MATTER** comes before the Court on Plaintiff Vivian Robles' appeal of the

Commissioner of Social Security's final decision denying her application for child's insurance

benefits on behalf of her grandson, Daniel A. Sanchez III ("Daniel"), under Title II of the Social

Security Act, 42 U.S.C. §§ 401-33.  Having considered the pleadings and the record, the Court

  **FINDS** and **CONCLUDES** that:

### I.  Jurisdiction

  Ms. Robles filed a claim for disability insurance benefits in June 1998 and was found to

have been disabled as of March 1997, with benefits commencing in September 1997.  In August

2003, Ms. Robles filed for child's insurance benefits on Daniel Sanchez' behalf, based on her

own disabled status.  After this application was denied, Ms. Robles filed a request for a hearing

before an Administrative Law Judge ("ALJ").  This request was granted and a hearing was held

---

[1]  At the time Ms. Robles filed her appeal, Michael J. Astrue was the Commissioner of Social
Security.  Carolyn W. Colvin is substituted as the Defendant in this action to reflect her
designation as Acting Commissioner of Social Security, effective February 14, 2013.

on April 25, 2005.  The ALJ concluded that David Sanchez was not entitled to benefits because: (1) his natural parents were neither deceased nor disabled at the time Ms. Robles became disabled or eligible for disability benefits; and (2) he had not been adopted by Ms. Robles.

The Appeals Council granted the Plaintiffs' request for review of the ALJ's November 2005 decision and remanded the case to the ALJ for further consideration of the disability status of David's parents.[2]  After conducting a second hearing on December 14, 2009, the ALJ again determined that David was not entitled to child's insurance benefits.  The ALJ reached the same conclusions.

The Appeals Council denied Ms. Robles request for review of the ALJ's second decision. Consequently, the ALJ's decision is the Commissioner's final decision for purposes of judicial review.  *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).  Ms. Robles' appeal was timely brought, and this Court exercises jurisdiction to review the Commissioner of Social Security's final decision pursuant to 42 U.S.C. § 405(g).

## II.    Issues Presented

Ms. Robles raises two challenges to the Commissioner's decision: (1) the ALJ's finding that David's parents were not disabled when Ms. Robles became entitled to disability insurance benefits was not supported by substantial evidence; and (2) the ALJ's finding that Ms. Robles did not equitably adopt David was not supported by substantial evidence.

## III.    Material Facts

Having reviewed the record in light of these issues the material facts follow.

---

[2]  The Appeals Council also noted that the ALJ did not use the correct date for determining David' potential disability entitlement.  The ALJ corrected this error in the second decision and this is not an issue before the Court.

Ms. Robles became entitled to disability payments as of September 1997.  Ms. Robles is

David Sanchez's maternal grandmother. Beginning in October 1996, with the consent of his

parents, Ms. Robles assumed exclusive care for David.

### A.   Facts relevant to the health, disability and death of David's parents.

David's father died in November 2004 from brain damage caused by a cardiac arrest.

Ms. Robles and Ms. Ross both testified that due to learning disabilities and problems with drugs

and alcohol he was unable to work during 1996.  However, the record contains medical records

pertaining only to his death.

With regard to the health of David's mother, medical records document several diagnoses

including anxiety, hypertension, and a gastro-intestinal bleed secondary to a Mallory-Weiss tear.

These records only cover 2002 through 2005 and do not indicate the existence or effect of any

impairment prior to 2002.  Although the records indicate that David's mother had a history of

anxiety and hypertension, they do not describe this history or associate this history with any

particular time period or behavioral effects.  Other than these records, the only evidence of

David's mother's health was her testimony that she was depressed when David began living with

Ms. Robles.

### B.   Facts relevant to whether Ms. Robles adopted David.

Beginning in 1996, Ms. Robles provided for all of David's needs, including food, shelter,

clothing, education, and medical insurance.  According to David's mother, she and his father

were unable to care for him, and they were willing to allow Ms. Robles to adopt David, but no

formal adoption ever occurred.

The record contains evidence suggesting that there was an informal agreement between

Ms. Robles and David's parents that Ms. Robles would adopt David.  Ms. Robles testified that

when she asked David's father if she could adopt David, he replied "But why do you have to adopt him?  You got him."  When Ms. Robles replied that it would allow David to be covered by medical insurance, David's father replied that Ms. Robles should do whatever she had to do. According to Ms. Robles, she had a similar conversation with David's mother.  David's mother recalled telling a social worker that she would allow Ms. Robles to adopt her son, but was not sure whether this was ever conveyed to Ms. Robles.  Ms. Robles testified that she spoke with a lawyer about adoption shortly after David came to live with her in 1996.  She also stated that she consistently referred to David as her son and treated him as such.  David and his aunt (Ms. Robles sister), corroborated this testimony.  David testified that he referred to Ms. Robles as his mother.

However, there is also evidence that is inconsistent with the existence of an agreement between David's parents that Ms. Robles adopted David.  For example, David never changed his last name from Sanchez to Robles.  Ms. Robles enrolled David in school but his school records intermittently refer to Ms. Robles as his grandmother, legal guardian, and parent.  Ms. Robles did not always identify herself as David's mother in applications she made to the Social Security Administration for child's insurance benefits.  In her initial August 2003 application for child's benefits she stated that "I would be the best payee for [David] because I am his relative and I take care of him."  She also wrote that "I am the grandparent of [David]."  In Ms. Robles' April 2004 Request for Reconsideration, she also stated that David was her grandson.  However, in her June 2004 Request for a Hearing, she argued that she had a parent/child relationship with David. This argument was repeated in a September 2004 letter to Social Security requesting expedited processing of her claim.  But then in an Authorization for Disclosure of Protected Health Information from September 2008, Ms. Robles characterized herself as David's legal guardian

and grandmother.  Finally, there are documents related to support proceedings in state court that are inconsistent with an understanding that Ms. Robles had adopted David.  In May 1998, Ms. Robles was party to a Motion to Change Payee which requested that she be named the payee for any child support collected from David's father.  Similarly, she was named as one of the parties in an Order for Child Support Payments from April 1999.  Both David's father and Ms. Robles signed a May 1999 Child Support order that required David's father to pay her $176 per month. This document described David's father as David's "parent" who had a duty to support David. An October 1, 2001 letter from the Adams County Department of Social Services states that "It appears that [David] was basically kicked out of his father's home and came to live with you on or about 10/30/96.  Please note that our Department did not take custody of Danny, and his placement with you was an informal arrangement by his parents."

## IV.    Standard of Review

Judicial review of the Commissioner of Social Security's determination that a claimant is not disabled within the meaning of the Social Security Act is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence.  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla, but less than a preponderance.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  On appeal, a reviewing court's job is neither to "reweigh the evidence nor substitute our judgment for that of the agency."  *Branum v. Barnhart*, 385 f.3d 1268, 1270, 105 Fed. Appx. 990 (10th Cir 2004) (*quoting Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

In certain circumstances, a grandchild of a person who is entitled to disability insurance benefits may themselves be entitled to benefits.  "…[T]o be eligible as a grandchild or stepgrandchild [for benefits], your natural…parents must have been either deceased or under a disability, as defined in § 404.1501(a), at the time your grandparent…became entitled to old-age or disability benefits…."  20 C.F.R. § 404.358.[3]  Disability is defined in § 404.1505 as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[4]

A child may also be eligible for disability benefits if he or she has been adopted as a child of a person who receives disability benefits.  Adoption may be formal or equitable, if recognized by state law.  Pursuant to § 404.359:

> You may be eligible for benefits as an equitably adopted child if the insured had agreed to adopt you as his or her child but the adoption did not occur.  The agreement to adopt must be one that would be recognized under State law so that you would be able to inherit a child's share of the insured's personal property if he or she were to die without leaving a will.  The agreement must be in whatever form, and you must meet whatever requirements for performance under the agreement, that State law directs…. If you apply for child's benefits during the insured's life, the law of the State where the insured has his or her permanent home at the time of your application will be followed.

---

[3]  Although 20 C.F.R. § 404.358 cites to 20 C.F.R. § 404.1501(a) for the definition of disability, that definition is now found in 20 C.F.R. § 404.1505.  Additionally, all references to the Code of Federal Regulations (C.F.R.) are to the 2012 edition.  Subsequent citations to 20 C.F.R. Part 404 will include only the specific section, e.g. § 404.1567.

[4]  Section 404.1505 also summarizes the five-step process used to determine disability and cites § 404.1520 as the regulation that explains this process.  Per § 404.1520(a)(2), the five step process applies "to you if you file an application for a period of disability or disability insurance benefits (or both) or for child's insurance benefits based on disability."  A medically determinable impairment "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not just your statements of symptoms."  § 404.1508.  In a social security disability case, the claimant has the burden of establishing disability.  *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997); § 404.1512(a).

As Ms. Robles lived in Colorado at the time she applied for disability benefits on David's behalf, the Court applies Colorado law with regard to adoption.  Colorado recognizes equitable adoption.  The leading case authority in Colorado is *Barlow v. Barlow*, in which the Colorado Supreme Court  explained, "By [equitable adoption] we mean a situation involving an oral contract to adopt a child, fully performed except that there was no statutory adoption,…"  463 P.2d 305, 309 (Colo. 1969).  In other words, equitable adoption in Colorado requires a demonstration of relinquishment of all of the rights and duties of the natural parents, and assumption of all of the rights and responsibilities by the adoptive parent.  With an equitable adoption, the parents and the adoptive parent must agree that this will occur and then act consistently with that agreement. All that is missing is the formal, legal recognition of the adoption.  In order to establish equitable adoption *Barlow* teaches that:

> One claiming benefit of an alleged oral contract for adoption… has the burden of establishing the contract by evidence so clear, cogent, and convincing as to leave no reasonable doubt as to the fact that such agreement was made.

*Id*. at 472-73.

## V.    Discussion

### A.  § 404.358: Grandchild Benefits

The ALJ found that David was not entitled to disability benefits under § 404.358 because neither of his parents were deceased or disabled at the time his grandmother, Ms. Robles, became disabled or entitled to disability insurance benefits.  David argues that the ALJ's finding was not based on substantial evidence.  He argues that his parents' lack of responsible behavior, alcohol and drug abuse, along with the testimony of Ms. Robles' sister, Ms. Ross, supports a finding that they were both disabled at the time Ms. Robles became disabled or entitled to disability benefits. The Commissioner responds that the ALJ's finding was reasonable considering the lack of

objective evidence in the record supporting David's assertion that his parents were disabled in March or September 1997.

In order for David to be eligible for disability benefits as Ms. Robles' grandson, his parents must have been either deceased or disabled in March 1997, when Ms. Robles allegedly became disabled, or in September 1997, when Ms. Robles became entitled to disability benefits. § 404.358. David's parents were both alive at these times, so the question is whether they were disabled. Arguably, in making that assessment, the ALJ should have applied the five-step process for determining disability, as outlined in §§ 404.1505 and 1520, but any error in that respect was harmless given the absence of pertinent medical information.

The only medical evidence related to David's father was hospital records that document his death from a cardiac arrest in November 2004. These records do not indicate any long-term impairment, save a note on the death certificate indicating that David's father had coronary artery disease. Ms. Robles and her sister, Ms. Ross, did testify that David's father had learning disabilities, trouble keeping a job, and had problems with alcohol and drugs. If the five step process had been used, such testimony would have been insufficient to establish a medically determined impairment at Step 2. *See* § 404.1508.

As to David's mother, the only medical records of record pertain to 2002 to 2005. These do not establish that David's mother suffered a severe medical impairment in 1997.

Although the Court normally reviews an ALJ's factual findings under the substantial evidence standard, in this case the ALJ's findings are based on a lack of evidence supporting disability.[5] The burden of proof with regard to disability of David's parents was on Ms. Robles.

---

[5] To characterize this negative finding (that the evidence was insufficient to support a finding that David's parents were disabled), as supported by substantial evidence would be a contradiction in terms.

Having reviewed the evidence of record, it is clear to the Court that Ms. Robles failed to establish that David's parents were both disabled at the pertinent point in time.

### B.   § 404.359: Equitable Adoption

In the decision, the ALJ found that the record did not establish by clear and convincing evidence as to leave no reasonable doubt that an adoption agreement was made between David's parents and his grandmother, Ms. Robles.  The ALJ based this finding on testimony from Ms. Robles, Ms. Sanchez, David, and documentary evidence in the record.  Ms. Robles argues that the ALJ's finding was not supported by substantial evidence.

In order for David to be eligible for child's disability benefits under § 404.359, Ms. Robles had the burden of establishing that she had an agreement with David's parents for her to adopt David.  Under Colorado law, the existence of the agreement had to be proven by "clear and convincing evidence such that no reasonable doubt remained."  *Barlow*, 463 P.2d at 309. Having reviewed the evidence, the Court concludes that the record supports the ALJ's finding that Ms. Robles failed to meet this burden.

The question is not whether this Court is persuaded by the evidence presented or whether it agrees or disagrees with the ALJ's assessment of the evidence.  Instead, the question is whether proof of an agreement between Ms. Robles and David's parents was "clear and convincing" or whether the proof presented left room for a "reasonable doubt" as to whether Ms. Robles and David's parents agreed that David's parents would cease to act as such, and that Ms. Robles would become David's mother.  The standard of proof is extremely high.  As noted in the factual summary, some evidence suggested the existence of such an agreement, while other evidence is inconsistent with the existence of such an agreement.  The inconsistency in evidence can give rise to a "reasonable doubt", and as a consequence, this Court finds no error in the

9

ALJ's determination that Ms. Robles did not establish that she equitably adopted David in accordance with Colorado law.

For the forgoing reasons, the Commissioner of Social Security's decision is **AFFIRMED.**  The Clerk shall enter a Judgment in accordance herewith.

DATED this 19th day of July, 2013

**BY THE COURT:**

Marcia S. Krieger
United States District Judge